**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INDUSTRIAL EXPERIMENTAL AND MANUFACTURING CO., Respondent.**

No. 01–1523.

United States Court of Appeals, Sixth Circuit.

June 21, 2001.

Before NELSON, BOGGS, and SUHRHEINRICH, Circuit Judges.

## JUDGMENT

The National Labor Relations Board (the "Board") applies for summary enforcement of its October 25, 2000, decision and order in Case No. 7–CA–41803 in which it found the respondent violated federal labor law and directed the respondent to take certain remedial steps stated therein. The respondent did not file an answer to the complaint and has not made

an appearance either before the Board or this court. Under these circumstances, we conclude the Board is entitled to the relief sought. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.")

It therefore is ORDERED that the Board's decision and order in Case No. 7–CA–41803 is hereby enforced. The respondent, Industrial Experimental and Manufacturing Company, Auburn Hills, Michigan, its officers, agents, successors, and assigns, shall:

1. Cease and desist from:

(a) Refusing to bargain collectively and in good faith with Local 985, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL–CIO (the "Union"), as the exclusive collective bargaining representative of the employees in the unit set forth below, by repudiating its 1998–2001 collective bargaining agreement with the Union, including by unilaterally refusing to pay wages and accrued vacation benefits; refusing to make payments into the employee health insurance plan, the 401(k) plan, and the pension plan; failing to remit money deducted from unit employees' earnings into savings and investment plans, and credit union accounts; and failing to remit to the Union dues checked off from employees' pay, as required by the collective bargaining agreement:

> All full-time and regular part-time production and maintenance employees employed by respondent at the Auburn Hills facility, but excluding sales, accounting, personnel and industrial relations, superintendents, general foremen, assistant foremen, and all supervisors, confidential employees, time study persons, plant protection employees, and clerical employees.

(b) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the National Labor Relations Act (the "Act").

2. Take the following affirmative action which the Board has found necessary to effectuate the policies of the Act:

(a) Comply with the terms and conditions of the 1998–2001 collective bargaining agreement with the Union, including the provisions concerning wages and accrued vacation benefits; the employee health insurance plan; the 401(k) plan; the pension plan; savings and investment plans; credit union accounts; and dues checkoff.

(b) Make whole the unit employees for any loss of earnings and other benefits they may have suffered as a result of the repudiation of the collective bargaining agreement in September 1998, as set forth in the remedy section of the Board's decision and order.

(c) Make all contractually required delinquent contributions owed to the various contractual fringe benefits funds since September 1998, and reimburse unit employees for any expenses ensuing from its failure to make the required contributions, as set forth in the remedy section of the Board's decision and order.

(d) Remit to the Union the dues that were deducted from the pay of unit employees pursuant to valid dues checkoff authorizations executed by employees and which have not been remitted since September 1998, with interest as set forth in the remedy section of the Board's decision and order.

(e) Preserve and, within 14 days of a request, make available to the Board or its agents, for examination and copying, all

payroll records, social security payment records, timecards, personnel records and reports, and all other records, including an electronic copy of such records if stored in electronic form, necessary to analyze the amount of backpay due under the terms of this judgment.

(f) Within 14 days after service by the Region, duplicate and mail, at its own expense and after being signed by the respondent's authorized representative, copies of the attached notice marked "Appendix" to all current employees and former employees employed by respondent at any time since September 1998.

(g) Within 21 days after service by the Region, file with the Regional Director a sworn certification of a responsible official on a form provided by the Region attesting to the steps that the respondent has taken to comply with this judgment.

## APPENDIX

NOTICE TO EMPLOYEES MAILED PURSUANT TO A JUDGMENT OF THE UNITED STATES COURT OF APPEALS ENFORCING AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

An Agency of the United
States Government

The National Labor Relations Board has found that we violated the National Labor Relations Act and has ordered us to mail and abide by this notice.

WE WILL NOT refuse to bargain collectively and in good faith with Local 985, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW). AFL–CIO as the exclusive collective-bargaining representative of the employees in the unit set forth below, by repudiating our 1998–2001 collective-bargaining agreement with the Union, including by unilaterally refusing to pay wages and accrued vacation benefits; by refusing to make payments into the employee health insurance plan, the 401(k) plan, and the pension plan; by failing to remit money deducted from unit employees' earnings into savings and investment plans, and credit union accounts; and by failing to remit to the Union dues checked off from employees' pay, as required by the collective-bargaining agreement:

All full-time and regular part-time production and maintenance employees employed by us at the Auburn Hills facility, but excluding sales, accounting, personnel and industrial relations, superintendents, general foremen, assistant foremen, and all supervisors, confidential employees, time study persons, plant protection employees, and clerical employees.

WE WILL NOT in any like or related manner interfere with, restrain, or coerce you in the exercise of the rights guaranteed you by Section 7 of the Act.

WE WILL comply with the terms and conditions of the 1998–2001 collective-bargaining agreement with the Union, including the provisions concerning wages and accrued vacation benefits; the employee health insurance plan; the 401(k) plan; the pension plan; savings and investment plans; credit union accounts; and dues check-off.

WE WILL make whole the unit employees for any loss of earnings and other benefits they may have suffered as a result of our repudiation of the collective-bargaining agreement in September 1998, with interest.

WE WILL make all contractually required delinquent contributions owed to the various contractual fringe benefit funds since September 1998, and reimburse unit employees for any expenses ensuing from our failure to make the required contributions, with interest.

WE WILL remit to the Union the dues that were deducted from the pay of unit employees pursuant to valid dues-checkoff authorizations executed by employees and which have not been remitted since September 1998, with interest.

INDUSTRIAL EXPERIMENTAL AND MANUFACTURING COMPANY